306 P.2d 272

Marie Tegeder MUCHMORE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARI-ZONA, and Lyndon Miner and Phil A. Baker, d. b. a. the Tucson Inn, defendant-employer, Respondents.

No. 6234.

Supreme Court of Arizona.

Jan. 15, 1957.

Robert F. Miller, Tucson, for petitioner.

Donald J. Morgan, Phoenix, for respondent, The Industrial Commission of Arizona; John R. Franks, Robert K. Park and John F. Mills, Phoenix, of counsel.

UDALL, Chief Justice.

By certiorari, petitioner Marie Tegeder Muchmore, a widow, has brought before us for review an award of the Industrial Commission of Arizona—hereinafter termed the commission—denying her, as sole dependent, "death benefits" provided for under the Workmen's Compensation Law, A.R.S. § 23–901 et seq. Her husband, Miles Burchard Muchmore, aged fifty-nine years, was fatally injured on Sunday evening, January 16, 1955, in an automobile collision occurring on U. S. Highway 84 near Tucson. We shall hereafter refer to this road as the Picacho Highway.

Decedent Muchmore at the time of his death was employed by Lyndon Miner and Phil A. Baker, a partnership, d. b. a. the Tucson Inn, which is a motor motel located at 127 West Drachman. The partnership carried workmen's compensation coverage with the State Industrial Fund.

There is no dispute as to petitioner's dependency, or that decedent was employed

for more than two years prior to his death under a contract as general manager of the Inn at a salary of $500 per month, nor of the fact that decedent, who never fully regained consciousness, died within the hour of the fatal accident. The crucial question presented is whether death resulted from an accident arising out of and in the course of his employment.

After investigation of the matter the commission made its award on March 11, 1955; protest and a petition for rehearing were timely filed. Upon rehearing the commission reaffirmed its previous award upon the basis of its finding that death of decedent was not caused by reason of an accident arising out of and in the course of his employment.

The points raised by petitioner's two assignments of error are (1) that the commission erred in the finding made, supra, and in failing to award death benefits, because the award made " * * * is contrary to law, not supported by the evidence, and is not a reasonable finding based thereon", and (2) that the commission erred in failing to find that decedent was killed in an accident arising out of and in the course of his employment, for the reason that the evidence wholly supports such a conclusion.

Before attempting an analysis of the voluminous evidence adduced in a four-day hearing, which consists of 571 pages of reporter's transcript, we deem it advisable to restate some of the principles governing such a review (they are so well established in this jurisdiction as to require no citation of authority): (1) the burden of proving that the accident which resulted in injury or death arose out of and in the course of the person's employment rests upon petitioner; (2) the commission as trier of facts is not required to disprove it; (3) the legal proof required may be either direct, circumstantial or facts giving rise to a rebuttable presumption; and (4) evidence adduced will be considered in a light most favorable for sustaining the award.

It is petitioner's contention that her claim was improperly denied because the accident which cost decedent his life occurred while he was performing a necessary service for his employers, to wit: a motor trip to inspect roadside signs advertising the Tucson Inn along the highway.

To properly evaluate the action taken by the commission it is necessary to examine the background of decedent's employment and his activities in connection therewith. The Tucson Inn, which had opened for business some two and one-half years prior to this fatal accident, consisted of one of the largest motor motels in the city—101 rental units—with an appurtenant coffee shop or restaurant and a swimming pool. Decedent Muchmore (with an exception hereinafter noted) had been the general

manager throughout the period, working no specified hours but available "around the clock", as he and his wife had their living quarters in one of the apartments. The Muchmores owned an automobile (the death car) which was primarily for their personal use, but which at times was also used by decedent in caring for his employer's business, and, when so used, the Inn paid the expense thereof.

As a means of attracting business the Inn had caused to be erected and maintained advertising signs on various roads leading into the city. This medium of publicity had been followed from the beginning of its operations. On the Picacho Highway such advertising was handled by lease contract with two firms which owned the sign boards. Arizona Neon Advertising, Inc., took care of the outside billboards (size 4 ft. x 8 ft.), using "Scotch Lite", a material that reflects the headlights of a car at night. According to its representative there were twelve such signs between Tucson and Picacho. Jack Ray Turner had a contract covering the erection and maintenance of one large electrically lighted sign (42 ft. x 12 ft.). This was located about 2,500 feet north of the point of impact, or four and one-tenth miles from the Inn. Turner was paid $80 per month for this service. When the manager learned of defects in any of the signs, they were promptly called to the attention of the contractor for correction.

The record is replete with evidence tending to show that decedent at all times had taken a great interest in, and sensed the importance of, highway sign advertising in attracting the travelling public to patronize the Inn. Furthermore, there is evidence that decedent Muchmore was in the habit of frequently driving in the evening on the main highways to personally view such signs.

There is also testimony that the Flamingo Motel (a competitor) had put up a sign somewhat overshadowing the Inn's electrically lighted sign, and the management was not pleased with this situation. Turner stated, "*they* wanted to talk to me about changing it". He asserted a conference had been arranged for Monday morning (January 17th). Mr. Baker, one of the co-owners, who had been living in the Inn for the previous eight months, was taking an increasingly large part in making decisions affecting operations at the Inn. He testified that this sign situation had been giving them some concern but was not certain a precise date had been set for a further conference between them relative to the matter.

It is not disputed that decedent ate dinner with his family that Sunday evening in their apartment at about 6:30 p. m. It was his married daughter's birthday, and to celebrate the occasion Mr. Muchmore promised to take them all at 8:30 p. m. to a local night club known as the "Casbah". Dece-

dent was observed downstairs from 7 to 7:30 p. m., where he aided in checking in at least one party of guests. The desk clerk, Pat Hackler, testified he last saw decedent about 7:30 or 7:35 p. m., and that the latter stated, as he left the Inn, "I am going to the Casbah. That is where I will be if you need me."

Petitioner testified that she and her daughter dressed for the birthday party and went downstairs, and, while they were waiting in the lobby, she was told there was a long distance telephone call for her. This telephonic conversation, so strongly relied upon, was purportedly as follows:

"A. I said, 'Hello'. The operator said, 'A call from Eloy for Mrs. Muchmore.' I said I was she, and then I said hello again, and Mr. Muchmore said, 'Hi, Snooks,' which was always his salutation, and he said, as I remember he said, 'I am at Eloy'. I said, 'What are you doing there?' He said, *'I went out for a ride to look at the signs* and I went farther than I expected and I will be a little late getting back.' I said, 'Okay, any time, we are ready and waiting.' We both said goodbye. *That is all there was to the call.*" (Emphasis supplied.)

Two bits of evidence tend to corroborate petitioner's statement of its content: (1) members of her immediate family who claimed to have been standing nearby verify Mrs. Muchmore's half of the conversation, and (2) there was introduced into evidence a telephone company slip recording a call through the Eloy exchange from an unnamed party to petitioner at 8:36 p. m. that evening.

From two eyewitnesses of the fatal accident came the following undisputed testimony: at approximately 9:30 p. m. the Muchmore automobile, driven by decedent, was travelling in a southeasterly direction on the Picacho highway when it struck a large truck which was proceeding in the opposite direction; the truck was travelling 35 m. p. h., the legal speed; and neither of these witnesses saw any lights from the Muchmore car. The investigating highway patrolman determined that said car was four feet over the center line in the lane of oncoming traffic, and that it was travelling 60 m. p. h., a figure based upon the complete demolishment of the car and the fact that the speedometer was frozen at that numeral. He further reported no skid marks were laid down by it.

The foregoing summation of testimony has, in the main, been given in a light most favorable to petitioner. There is, however, other irreconcilable evidence in the record which the commission might well have found cast grave doubts upon decedent's having made the Picacho trip with its attendant telephone call. The testimony of Tony Orlecky, maintenance man at the Inn, and Homer Fite, a former chef at the

Inn, is significant when examined in relation to the location of Picacho, 50–55 miles from Tucson, and the time necessary to drive an automobile that distance. While he would not state positively whether it was Sunday or Saturday night, Orlecky did definitely testify that he saw decedent at the Inn pool at approximately 8:45 p.m., and that thereafter they went to the Green Lantern, a cafe and bar a short distance northwest of the Inn on Miracle Mile, and had a couple of drinks before parting. This, he testified, occurred the same night that he was reimbursed for an expense item of $10.85 (in fairness it should be stated there was considerable evidence by which the trier of facts could have found Orlecky's testimony largely impeached, but he did not vacillate upon this point). In evidence is an Inn "paid out" slip for such an amount made to Orlecky, dated "1–16". Further, Baker testified that Pat Hackler, the desk clerk, had told him he paid the sum to Orlecky on January 16. The written statement of Fite asserted that he talked to Muchmore at the Inn between 7:30 and 8 p.m. that Sunday evening. Obviously it would have been impossible for decedent to have travelled to Picacho and to have made the phone call at 8:36 p.m. from there if he were at the Inn around 8:45. As to Fite, his statement was taken ex parte without notice to petitioner; however, counsel for petitioner failed to take advantage of opportunities later offered to go to Miami, Arizona, at the commission's expense, to cross-examine him.

A dearth of evidence as to certain matters may have also weighed heavily against petitioner with the trier of facts. It seems most significant that decedent gave no indication to the desk clerk that he was then going on a sign inspection trip; also he failed to disclose such an intent to his family, even though to accomplish it involved breaking his engagement to go with them to the Casbah on the birthday party. Furthermore, the telephone slip in evidence—interpreted by the company representative—discloses the party placing the call had to ask the operator for the Inn's telephone number and, also, that it was a paid call instead of being collect as one might naturally expect if it were being made by the manager.

From the following facts further inferences may have been drawn which are inconsistent with decedent's claimed trip to Picacho. The last of the Inn's Scotch Lite board signs was at a point 45 miles from Tucson, while the purported telephone call substantiating the trip was made from a service station at least five miles farther northwest. Baker testified that he had never directed nor expected Muchmore to check the board signs on that road; in fact, he stated, such a trip would not have been authorized (but we do not believe that would remove decedent from the scope of his employment as a matter of law).

The evidence is uncontradicted that such signs are, and need only be, checked by the sign company representative every thirty days. After pointing out that the partnership had contracted with the sign people for maintenance of the signs, Baker stated there was no pressing necessity for the manager to check them.

There is positive evidence from Baker that the owners were becoming dissatisfied with the way Muchmore was managing the business. For a period of a month prior to the accident the financial records of the Inn had been in the process of being audited which ultimately resulted in a substantial charge-back to him. Two days before his death decedent and Baker had a frank conversation relative to his management of the enterprise. At that time Muchmore was relieved of his control over the coffee shop, as it had been steadily losing money, and his managerial powers were further limited. The question as to whether the owners intended to continue decedent at all as manager of the Inn was discussed between them, but no change of that status had been made to the time of his death. The witness Fite, in relating his conversation with Muchmore on the evening in question with respect to money the former claimed was due him from the Inn, stated, "Mike called me over * * * *and told me he was getting fired*", and that he, Fite, should get his money because decedent might not be there the next day.

Petitioner strongly relies upon the case of Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286, wherein we held the .facts there shown were such as to give rise to a rebuttable presumption that deceased was within his employment at the time of accident. While that is a sound principle of law applicable to the facts. of that case, we are of the view that it. cannot be successfully invoked under the record here presented. It is our view the commission would have been justified in concluding it was a mere coincidence that this accident occurred within approximately one-half mile of the Inn's electrically lighted sign, and did not necessarily raise a legal presumption in petitioner's favor. The instant case is more nearly comparable on its basic facts and law to the later case of Martin v. Industrial Commission, 75 Ariz. 403, 409–411, 257 P.2d 596.

Decisions of this court have established these further rules for our guidance in reviewing these compensation cases : (a) as trier of the facts it is the privilege and duty of the commission—and not of this court—to resolve all conflicts and draw warranted inferences ; (b) where two inferences may be drawn, the commission is. at liberty to choose either, and its conclusion will not be disturbed unless it is wholly

352

unreasonable; (c) testimony of interested witnesses may be disregarded, In re Wainola's Estate, 79 Ariz. 342, 346, 289 P.2d 692; and (d) our Workmen's Compensation Law does not provide for general health and accident coverage and, hence, it is only in those instances where there is a causal connection between the employment and the accident that accidental death of an employee is compensable.

█ Applying the foregoing principles to the record of this case, we do not believe there is any legal justification for our holding that the evidence was such as to compel the commission to find that decedent came to his death through an accident arising out of and in the course of his employment. The fabric of petitioner's claim that decedent was performing a service for his employer largely rests upon the evidence of interested witnesses relative to decedent's purported trip to and telephone call from Picacho. There was other competent evidence placing decedent in Tucson at a time that would have made the Picacho trip an impossibility. It was the duty of the commission to resolve these conflicts in the evidence, and its prerogative to draw those inferences permitted by the record.

The award is affirmed.

PHELPS, WINDES and LA PRADE, JJ., concur.

STRUCKMEYER, J., concurs in the result.