375 P.2d 373

**William VAN DYKE, Petitioner,**

v.

**STANDARD ACCIDENT INSURANCE COMPANY, Defendant Insurance Carrier; the Stearn-Roger Manufacturing Company, Defendant Employer; the Industrial Commission of Arizona, Respondents.**

No. 7427.

Supreme Court of Arizona.

In Division.

Oct. 25, 1962.

Jack T. Arnold, Tucson, Hirsch, Van Slyke, Richter & Ollason, Tucson, for petitioner.

Chandler, Tullar, Udall & Richmond, Tucson, for respondent Standard Acc. Ins. Co.

Donald J. Morgan, Phoenix, for respondent Industrial Commission.

BERNSTEIN, Chief Justice.

This is a review, by writ of certiorari, of actions of the Industrial Commission of Arizona. The petitioner, William Van Dyke, contends that the Commission erred in finding that the petitioner is physically able to perform the duties of a re-bar (reinforcing steel) worker on a full time basis, and that the Commission erred in refusing to

consider certain evidence offered to show the nature of re-bar work.

Petitioner was involved in an industrial accident in 1958 while working as a structural steel worker. His claim for temporary disability compensation was processed, an award was made and the claim duly closed. On February 10, 1960, the petitioner filed application to reopen the claim, and in March 1960, the Commission made findings that the petitioner had sustained new, additional or previously undiscovered disability by reason of the 1958 injury. A series of hearings as to the nature and extent of petitioner's disability was held before the Commission between August 10, 1960 and May 10, 1961. On May 24, 1961, the Commission made Findings and Award for Unscheduled Permanent Partial Disability under A.R.S. § 23–1044(C) and (D). This award found that the petitioner had sustained a five percent general functional disability which prevented him from performing the duties of his occupation as a structural steel worker, but did not prevent him from performing the duties of a re-bar worker.

Petitioner made application for rehearing and on July 13, 1961, presented testimony by seven witnesses to the effect that re-bar work was physically harder, and placed more strain on the back than did structural steel work. This evidence was received subject to the respondents' objections, and on September 6, 1961, the Commission entered its order rejecting the evidence for the reason that the same evidence could have been produced by the exercise of reasonable diligence at the earlier hearings. The Findings and Award of May 24 were reaffirmed.

Petitioner's assignments of error present two questions: (1) Is the Commission's finding that petitioner's disability does not prevent him from performing the functions of a re-bar worker supported by the evidence? (2) Did the Commission err in refusing to consider the evidence given at the hearing of July 13, 1961?

The decisions of this Court which state that we will not weigh conflicting competent evidence presented before the Industrial Commission, but will look only to see if the Commission's findings are supported by any reasonable evidence are legion, e. g. McGee v. San Manuel Copper Corp., 89 Ariz. 244, 360 P.2d 1024 (1961); Valerio v. Industrial Commission, 85 Ariz. 189, 334 P.2d 768 (1959); McGill v. Industrial Commission, 82 Ariz. 36, 307 P.2d 1042 (1957). We have been equally clear that where there is no evidence in the record upon which the Commission could have based its finding, the award will be set aside, Hunter v. Industrial Commission, 73 Ariz. 84, 237 P.2d 813 (1951); Foley v. Industrial Commission, 73 Ariz. 82, 237 P.2d 812 (1951); Hobson v. Twentieth Century Fox Film Corp., 71 Ariz. 41, 223 P.2d 399 (1950).

In our view, these simple rules are dispositive of the case at bar, and we find it unnecessary to reach the second question raised by the petitioner. A review of the record shows that there is no evidence whatever upon which the Commission could base its finding that petitioner is able to do re-bar work. In reaching this conclusion it is not necessary to consider the evidence given at the July 13th hearing as this evidence was all in favor of petitioner's position that re-bar work is more strenuous than structural steel work.

The evidence concerning petitioner's physical disability was given by two expert witnesses called by respondents at hearings on August 10 and September 8, 1960. One of these witnesses testified:

"Q. Isn't there a probability that his condition would show further improvement with a further lapse of time * * *?

"A. [Dr. Christoper A. Guarino] Well, I feel that Mr. Van Dyke will improve, will always improve with time as long as he is not doing very heavy, strenuous work. But I think the likelihood is that every time he goes back and does real heavy, strenuous work, he has an excellent chance of again having difficulties. * * *

* * * * * *

"Q. Now I suppose you are familiar with the type of things that an ironworker has to do?

"A. Some, yes.

"Q. I mean do you think that a man with Mr. Van Dyke's back could climb steel columns, I mean shinny up them without the help of a ladder, pulling himself along day after day?

"A. I think that he could do it possibly once, twice, but I think over the long haul sooner or later that continuing to do this type of thing will start to produce symptoms.

* * * * * *

" * * * I would say that the type, the specific things in ironwork that would be detrimental to Mr. Van Dyke's back is tugging and pulling on the wrenches that they have to do in awkward, twisted positions. Probably he could do the same thing if he was stable on the ground with his feet under him, and in a straight position and not have as much trouble. But having to get into an awkward position and then do the same activities, the combination of those two factors is what is particularly bothersome to this type of a back.

* * * * * *

"Q. So it's from your examination and treatment of Mr. Van Dyke that it's your unqualified opinion that he must change his occupation?

"A. It would certainly be to his best advantage, yes."

The second medical expert testified:

"[Dr. Warren D. Eddy, Jr.] It was felt the disability was primarily one which prohibits him from doing heavy work in precarious positions, such as his structural steel work. Other than that, it was felt the patient could be gainfully employed even at moderately heavy work. That was our general recommendation.

"Q. I want to be sure I understand it, Doctor. Am I correct that the restriction on heavy work is contingent on his doing it in precarious positions?

"A. Primarily we felt that because of the back in the condition it was, where it was as unpredictable as it was, that it was not very safe for him to be in a high place where he may be off balance. Even on level ground doing things off balance is apt to strain your back. Although he had a disability, we felt he could do moderately heavy work. That would presume he was in a position where he could control himself and do it correctly. It was our feeling that in structural steel work you are not always in a position to lift and do things in a native environment. The same thing lifted up in the air is one thing, but it may not be as difficult down on the ground where you have your feet solidly planted. That statement does imply that his back is

not very bad, and we thought he could do considerable manual moderately heavy work."

Following the hearings at which the foregoing evidence was given it was suggested that the petitioner might be physically able to perform the duties of another branch of the ironworkers trade, re-bar work, with which he admitted he was familiar. Both sides produced testimony as to the nature of this work.

The principal witness for the respondents testified:

"Q. Is it [re-bar work] pretty hard work?

"A. Yes, it takes a strong back and a weak mind to be a re-bar man.

\*    \*    \*    \*    \*    \*

"Q. Was I correct in my assumption that most re-bar work is done on the ground or on a deck?

"A. Re-bar will occur most any place. It is used to reinforce concrete, so any place you have concrete or find concrete within a building you will find reinforcing steel within it. You will have re-bar in buildings, foundation slabs, footings, all the way through a structure, and it is just that the majority of the re-bar is placed in slabs. Now, it is in walls, and when you put re-bar in walls you will set a scaffold, such as the steel scaffolding

which you are familiar with, and the vertical and horizontal re-bars will be passed up to a man and they will tie on the vertical walls."

This witness testified that he had started his career as a carpenter and had worked up to the position of construction superintendent of a large construction company in the Tucson area. He had never worked as an ironworker himself, but had indirectly supervised their work. He admitted that he had never hired ironworkers or been inside the union hall where they were hired, but stated that an ironworker could refuse to do anything but re-bar work if he so desired.

Petitioner's witness, the assistant business representative of the Tucson Ironworkers Local testified that he had had 16 years experience as an ironworker. He stated that most of the re-bar work available in Tucson was at the Titan missil sites.

"Q. What does re-bar work on the Titan sites consist of?

"A. Actually it is just like a silo. These boys, they will put this iron in and hang off this wall, work off the wall right on up.

"Q. On re-bar work are there very many re-bar jobs where there isn't some climbing connected with it?

"A. Very few.

\*   \*   \*   \*   \*   \*

"Q. The basement work over there, is that all re-bar work?

"A. Right.

"Q. Where they come from the sub-basement out?

"A. Yes.

"Q. Would you say on those jobs the re-bar work entails climbing?

"A. Yes, you would have to be able to climb.

"Q. If you can, can you make some sort of comparison between the type of work that you do on a re-bar job and the type work you do on a structural job, as to which you consider to be the harder type of labor?

"A. Physically, I know re-bar is because nine times out of ten you don't have a rig there. You reach down and pick that iron up and carry it yourself. \*   \*   \*"

On cross-examination this witness testified:

"Q. Mr. Arnold asked you about the climbing entailed in some of the re-bar work. There is quite a bit of re-bar work that is on the ground or on the deck in addition to something where the man has to climb, is that a fair statement?

"A. You do have your slabs, but then I don't know of any job you go on—just like this one out here at Del

Webb's, that is slab work, but you are up and down all day long."

And on redirect:

"Q. Mr. Rowles, Mr. Richmond asked you about the slab work on these re-bar jobs. When you dispatch a man to work on a re-bar job can you just send them out and tell the contractor: 'this is all he can do is do slab work, he can't do anything else'?

"A. No, the boy wouldn't have a chance on anything like that, they would run him off.

"Q. The contractors wouldn't take a man unless he can be sent out for re-bar, he has to do the climbing also?

"A. Yes."

From an examination of the evidence as a whole we find that the medical witnesses are agreed that the petitioner is unable to do heavy physical labor in awkward or precarious positions. The witnesses who described re-bar work including respondents' witness, are in agreement that re-bar work involves climbing on walls and down into foundation trenches. There was undisputed evidence that it sometimes involves lifting of heavy iron bars while scaling the reinforcement structure of walls. Respondents' witness indicated that sometimes re-bar work on walls is done off of scaffolding, but he did not say it was always so, and petitioner's witness indicated that many times the re-bar men worked off the rods they had just installed. Moreover, there was no testimony that would support an inference that working on a scaffolding or off of the re-bar rods was the equivalent of working "stable on the ground with his feet under him" or with his feet "solidly planted", thus fulfilling the conditions the doctors put upon petitioner's ability to do moderately heavy work.

Respondents' witness testified that the petitioner would be able to refuse any offered ironwork other than re-bar work if he so desired, but this does not support the inference that he would be able to refuse those aspects of re-bar work that would involve climbing. On the contrary, the assistant business representative, who was responsible in part for the hiring operations of the local union, testified that a worker could not be sent out to the job to do re-bar work only on slabs.

This is not a case where the evidence is in conflict. The medical witnesses agree that the petitioner cannot do heavy work which involves climbing and positions of precarious balance. All of the testimony affirms the fact that re-bar work in many of its aspects includes climbing. The uncontroverted evidence is that petitioner cannot choose to do only those types of re-bar work that do not involve climbing. It is our view that the finding that petitioner is physically able to do re-bar work is not supported by the evidence.

The award of the Industrial Commission is set aside.

STRUCKMEYER, J., and PORTER MURRY, Judge of Superior Court, concurring.