391 P.2d 589

**GRAVER TANK AND MANUFACTURING COMPANY, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, and Maria Saucedo Serrano, Widow of Arturo Serrano, Deceased, Respondents.**

**No. 7807.**

Supreme Court of Arizona,

In Division.

April 23, 1964.

Twitty, Sievwright & Mills, Phoenix, for petitioner, Graver Tank & Manufacturing Co.

Ben P. Marshall, Phoenix, for respondent Industrial Commission. Donald J. Morgan, C. E. Singer, Jr., Lorin G. Shelley, Robert D. Steckner, Phoenix, of counsel.

Ira Schneier, Tucson, for respondent Maria Saucedo Serrano.

JENNINGS, Justice.

Petitioner employer Graver Tank and Manufacturing Company (a self-insurer under the Workmen's Compensation Act) has appealed by certiorari for a review of certain findings and an award made by the Industrial Commission which directed petitioner to pay death benefits to Mrs. Serrano. Respondent Serrano had filed a claim for widow's benefits and the Commission made an award finding her husband's death was caused by an injury arising out of and in the course of his employment. The award was reaffirmed on rehearing.

The principal question presented on this appeal is: Should the Commission's findings and award of death benefits be set aside for lack of substantial supporting evidence? To determine this, we will not weigh the conflicting evidence presented before the Commission but will look only to see if the Commission's findings are supported by any reasonable evidence. Van Dyke v. Standard Acc. Ins. Co., 92 Ariz. 173, 375 P.2d 373. Also, the evidence adduced will be considered in the light most favorable to sustaining the award. Muchmore v. Ind. Comm. of Ariz., 81 Ariz. 345, 306 P.2d 272.

Deceased was employed to sweep floors in a missile silo in Tucson. At the time he was hired he said he was in good health. No physical examination was required. On March 22, 1962, deceased was engaged in sweeping the smooth concrete floor of Level 3, Missile Site 12. The floor was being swept in order that a chalk line could be used to set steel on the next elevation. Two men, Carroll (Ross) Rieder and a welder, were holding the ends of the chalk line, a $\frac{1}{16}''$ string covered with bright chalk, on the floor, while a third man, R. D. Folks, was stationed in the middle in order to snap the string, thereby leaving a straight chalk line impression on the floor.

At about 9:00 o'clock that morning, deceased stepped on the chalk line. He was told to get off the string, did so, appeared to stagger and stepped back on the string. He then fell, landing on a tool box on the cement floor. The string was found looped

around his toe. He was later placed on a stretcher and hoisted to the surface.

In his pocket was found a card which said, "I am not intoxicated. I am a diabetic." One of the workmen called the physician whose name was on the card for instructions. He was told to give deceased sugar. A search of lunch boxes produced some sweets which were given to deceased. After this, he seemed to rally.

Serrano suffered a broken humerus and died two days later in the hospital. An autopsy disclosed, among other things, that deceased suffered from glomerular nephritis and hypertensive heart disease, both of which antedated his fall. He also suffered from uremia (impairment of kidney function allowing toxic waste products to remain in blood), and these conditions together with fatty embolae lodged in the terminal blood vessels in the lungs, resulted in his death. The fatty embolae had apparently originated from the fracture site and were carried to the lungs by the blood.

Petitioner contends the serious medical conditions, and not deceased's employment caused the death; that while deceased suffered an injury during the course of his employment, the injury did not arise out of his employment. Respondent maintains there was competent evidence to conclude deceased tripped over the string and that the resulting injury thus arose out of his employment.

Was there any reasonable evidence from which the Commission could find that tripping over the string caused the fall? We think so. Folks, in his affidavit, made the following statements:

"* * * Serrano was walking toward Ross Rieder, the engineer and stepped on the chalk line. Rieder hollered at him to get off the line. *Serrano became confused and was trying to get off the line but his foot caught and pulled it out of Rieder's hand.* Then Rieder screamed at him again. Then the man Serrano became real excited, turned and fell sorta to one side against Don Weinel and then against the gang tool box. From the look on his face I would say he was having some kind of spell before he fell or as he was falling. * * *" (Emphasis ours.)

Folks testified on cross-examination, that when deceased fell, the line was around his toe. Folks further testified on cross-examination to the following effect:

"Q Let me just say what you said here. You said, He became confused and was trying to get off the line but got his foot caught. Now he got his foot caught where?

"A In the line.

"Q All right. Now you saw that, didn't you?

"A   Yes, sir.

\*   \*   \*   \*   \*   \*

"Q   And you state that as he fell, he still had this rope wrapped around what foot, the right foot?

"A   I believe it was the right foot, I'm not sure.

"Q   And he was tangled up in it, is that right?

"A   It was wrapped around his toe.

"Q   Tangled up?

"A   Yes."

On re-cross Folks testified as follows:

"Q   At the time Serrano came in there, that as far as you know that line was tight, was it not?

"A.   As far as I know, yes.

"Q   And the next thing as far as you know that he got his foot caught in that line?

"A   That's right.

"Q   And that the line was still tight?

"A   As far as I know, yes."

Rieder on direct examination testified:

"Q   Now when Mr. Serrano—you stated he stepped on the line. What happened to the line?

"A   Well, it seems that he stepped on it once and then I called to him, and then in his staggering he stag-gered into it and pulled it out of my hand

\*   \*   \*   \*   \*   \*

"Q   How soon after the line left your hands did he fall?

"A   This is hard to say.  It was almost instantaneously, the whole reaction came at one time."

■   There was much testimony to the effect that deceased appeared to be having an epileptic seizure at the time, which seizure caused him to fall.  Also petitioner asked the following hypothetical questions of a physician called to testify:

"Q   If you were to assume that Mr. Serrano, on March 22nd, was sweeping a concrete floor and stepped on a chalk line that was being held flush with the floor by two other individuals, and that he was yelled at by one of the men to get off of the chalk line, and appeared to be staggering and then crumpled to the floor, would this activity that I have just described be consistent with any one of the three diseases?"

\*   \*   \*   \*   \*   \*

"A   Yes, sir.

"Q   Which one of the three, or again would it be consistent with all three?

"A It would be consistent with any one of the three."

If we could have heard the case we might have reached a different conclusion than the Commission. The testimony concerning the epileptic seizure theory is very strong. Nevertheless where the facts permit two inferences to be drawn, the Industrial Commission is at liberty to choose either, and its conclusion will not be disturbed on review unless wholly unreasonable. Muchmore v. Ind. Comm. supra. We cannot say the conclusion reached is wholly unreasonable.

Petitioner attacks the findings on the ground they are evasive of the simple question of evidentiary fact submitted to the Commission for determination, i. e., what caused the fall? This contention is without merit. The Commission, in its original award, made the finding that deceased, while employed by petitioner, sustained an injury by accident arising out of and in the course of his employment on March 22nd, 1962, which injury proximately caused his death on March 24th, 1962.

Petitioner, on rehearing, admitted that the fracture sustained in the fall, together with the other serious pre-existing diseases previously referred to, caused the death of Serrano. The question which they wanted the Commission to determine was "what caused the fall?" The Commission, however, in its decision affirming death benefits, did not answer this question. Rather they made the finding that deceased did die as the result of injury sustained March 22nd, 1962, and that the injury and the development and residuals proximately caused and contributed to his death on March 24th, 1962. This finding constituted a mere restatement of facts admitted by petitioner in its motion for rehearing.

██ It is well established that findings required in Workmen's Compensation cases are findings of ultimate facts. Ethel D. Company v. Industrial Accident Commission, 219 Cal. 699, 28 P.2d 919. The question as to whether the accident arose out of and in the course of the employment is an ultimate fact which must be found by the Commission. Empire Health & Accident Ins. Co. v. Purcell, 76 Ind.App. 551, 132 N.E. 664. The Commission need not set forth the separate findings on the evidentiary facts which lead to a determination of the ultimate fact. Clarke v. Industrial Accident Commission, 87 Cal.App. 766, 262 P. 471.

██ The Commission, in its original award, did find the ultimate fact required to be found. There being no new evidence adduced upon the rehearing, the original finding was sufficient under the circumstances to sustain the award.

Judgment affirmed.

UDALL, C. J., and STRUCKMEYER, J., concur.