501 P.2d 960

**H. P. FOLEY ELECTRIC COMPANY and Liberty Mutual Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Lester L. Gill, Respondent Employee.**

**No. 1 CA–IC 586.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 17, 1972.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Ralph E. Mahowald, Phoenix, for petitioners.

William C. Wahl, Jr., Chief Counsel, Phoenix, for The Industrial Comm. of Ariz.

Ward & Contreras by A. D. Ward, Phoenix, for respondent Gill.

EUBANK, Judge.

Petitioners seek review by writ of certiorari of the lawfulness of an award of The Industrial Commission finding respondent Lester L. Gill's claim compensable as resulting from an injury by accident arising out of and in the course of his employment.

The questions raised by petitioners are: (1) whether there was sufficient evidence to support the award of the Commission, and (2) whether there was an abuse of discretion on the part of the hearing officer when he denied a motion to continue the hearing for the purpose of securing testimony from missing material witnesses.

On November 11, 1969, while employed as an electrician by petitioner H. P. Foley Electric Company, on the premises of the

Western Electric Company in Phoenix, respondent-claimant fell on a concrete walkway, sustaining injuries to his head which, he claimed, caused the onset of a series of epileptic seizures and necessitated his hospitalization. Respondent's application for benefits was denied by petitioner Liberty Mutual and a formal hearing was held on July 28, 1970. Following the hearing, the hearing officer issued his Decision Upon Hearing and Findings and Award for Compensable Claim in favor of respondent which was later affirmed by the Commission.

Petitioners contend that the following Finding of the hearing officer is erroneous and not supported by the evidence:

"4. . . . [T]hat the medical testimony and medical records in evidence clearly establish that applicant sustained a series of grand mal epileptic convulsions or seizures on November 11, 1969; that there is no substantial evidence, however, that said seizures occurred prior to applicant's admission to the emergency room at Maryvale Community Hospital; that the testimony of applicant, corroborated by other disinterested parties, clearly establishes that the applicant fell upon a cement floor and that said floor was wet and slippery at the time, which said condition caused the applicant to slip and fall. . . ."

The record is clear that prior to his November 11th fall, respondent had never experienced epileptic episodes. Immediately after the fall, and later at the hospital, respondent was observed undergoing several grand mal seizures. The Commission was thus faced with two equally reasonable inferences which could be drawn from the evidence: (1) respondent suddenly experienced the first epileptic seizure of his life, at age 46, which caused him to fall and strike his head; (2) or the blow to his head, following the fall, precipitated the epileptic attack.

Since injuries resulting from idiopathic falls, although occurring during the course of employment, in and of themselves

are not compensable as arising out of the course of employment, the main factual issue before the Commission was whether respondent was or was not experiencing a seizure at the time that he fell at Western Electric. *See* Valerio v. Industrial Commission, 85 Ariz. 189, 334 P.2d 768 (1959); PMC Powdered Metals Corp. v. Industrial Commission, 15 Ariz.App. 460, 489 P.2d 718 (1971).

One witness, Mrs. Belan Diaz, testified and vividly described respondent's seizure before his fall. Respondent denied this, and claimed that he slipped and fell in a puddle of water. Respondent's testimony was corroborated by a second witness whose view was partially obscured but who indicated that he saw water on the walkway before he saw respondent slip and fall. A third witness who arrived on the scene after the accident said that he saw a large puddle of water on the floor at approximately the place where respondent fell. In addition, a witness testified that respondent's shirt and the upper part of his trousers were wet when he arrived at the hospital. Petitioners, on the other hand, contend that any wetness was caused by the partially filled soft drink respondent spilled when he fell.

The only direct medical testimony elicited at the hearing was given by Dr. John Sanders, a neurosurgical resident at Barrows Neurological Institute, who was the admitting and one of the attending physicians. Dr. Sanders, testifying primarily from the medical records, indicated that he could not give an opinion as to the cause of the seizures. He said that he believed the initial seizure preceded the fall, and based this conclusion on the reports of a witness that respondent "cried out" before he fell, because "this is a classical finding in a grand mal seizure." The doctor added, however, that "it's important to know . . what [the witness] means by 'crying out'". On cross-examination the doctor testified as follows:

"Q. Just so that we understand what you are saying, your conclusion that this

man had a seizure and then fell is based upon your having been told by someone that he had been walking along, had cried out and had simply fallen over?

A. That's true.

Q. You were not given any factual background that this man had slipped and had fallen and had hit his head?

A. I had given the background that he had fallen. I had been given the knowledge that he had fallen after crying out. I knew he had fallen.

Q. Had you been given any facts that he had slipped on some wet flooring and had fallen and had hit his head and was then observed to have the convulsive type action?

A. No, I did not receive that kind of information.

Q. If you had received that kind of information, and assuming that to be true, then you would not conclude that the seizure had caused the fall, would you?

A. That's true, that is obvious."

Respondent testified at the hearing that he "let out a beller" as he slipped and fell. Mrs. Diaz, who was about five feet from respondent when he fell, testified that she did not hear him cry out, but that he might have without her hearing it since the area was very noisy. No other testimony concerning this aspect of the case is found in the record.

The doctor also noted that there was some evidence of a basal fracture of the skull, and some evidence of an aneurysm (enlarged or dilated blood vessel) which might or might not have been caused from respondent's fall.

In regard to the respondent encountering an epileptic seizure prior to the fall, Dr. Sanders testified on cross-examination that it was unusual for a person to live until he is in his forties, such as respondent had done and then have his first seizure; that idiopathic epilepsy is most generally first noted in early childhood; and that seizures could be caused by a blow to the head. He had previously testified to finding a "slight bruise on the right frontal temporal region" of the respondent's head which in his opinion did not cause the seizure.

On the basis of the foregoing, petitioners contend that there is insufficient competent testimony on which to base the Commission's award. We disagree. The facts of the case at bar are closely aligned with the situation in Graver Tank & Manufacturing Co. v. Industrial Commission, 96 Ariz. 34, 391 P.2d 589 (1964), wherein there was much testimony to the effect that the claimant appeared to be having an epileptic seizure at the time he experienced the fall on which his claim was based. Two other theories of the accident were also propounded. The medical witness testified that the facts were consistent with any one of the three theories. Our Supreme Court held that under such circumstances:

" . . . [W]here the facts permit two inferences to be drawn, the Industrial Commission is at liberty to choose either, and its conclusion will not be disturbed on review unless wholly unreasonable. . . . (citation omitted) We cannot say the conclusion reached is wholly unreasonable. . . . " (96 Ariz. at 38, 391 P.2d at 592)

*See also* Southwest Forest Industries, Inc. v. Industrial Commission, 96 Ariz. 91, 392 P.2d 506 (1964); Raymer v. Industrial Commission, 18 Ariz.App. 184, 501 P.2d 25 (filed September 21, 1972).

Here in the case at bar we have two possible inferences that can be drawn from the medical evidence and the hearing officer drew one—that the respondent slipped and fell and that the seizure resulted from the fall. As in Graver Tank, we cannot say that the conclusion reached by the hearing officer and Commission is wholly unreasonable. Furthermore, lay testimony supports the finding that the fall preceded the seizure. Under such circumstances we must affirm the award.

Petitioners' second question on review contends that the hearing officer abused his discretion when he denied their motion for a continuance made under Commission Rule 36 which was in effect at the time of the hearing and reads as follows:

"36. Continuance of Hearing:—If, at the conclusion of a hearing held before a Commissioner or referee, either party desires a further hearing in order to introduce further evidence, such party *shall state, specifically and in detail, the nature and substance of the evidence desired to be produced,* the names and addresses of the witnesses, and the reasons why such party was unable to produce such evidence and such witnesses at the hearing. If it appears to the Commissioner or referee presiding at the hearing, that with the exercise of due diligence, such party could have produced such witnesses or such evidence at the hearing or that such evidence is cumulative, or immaterial, or otherwise not necessary, the Commissioner or referee may submit the case for decision and deny the request for such further hearing, or may on its own motion continue the hearing. When a hearing is concluded, the matter shall be deemed submitted, subject to the jurisdiction of the Commission to make any further or independent investigation, including medical examination, it may determine advisable in the premises." (Emphasis added)

The record shows that the Commission notified all parties on February 26, 1970, that the hearing would take place on July 28, 1970, at the Commission's hearing office in Phoenix. Just seven days before the hearing, petitioners notified the hearing officer that they desired to subpoena, among others, Mary Decuir and Carol Pick as witnesses to testify at the July 28 hearing. By the day of the hearing the subpoenas for these two witnesses had not been served. Toward the end of the hearing on July 28, the petitioners introduced evidence of their good faith effort to serve the two witnesses and the witnesses' unavailability

to testify. Then the petitioners made the following motion:

"At this time, Mr. Hearing Officer, I would ask leave to take by way of deposition by way of Interrogatories the testimony of Mary Decuir based upon the foundation for the necessity of taking her testimony, based upon Mrs. Diaz' testimony, that it was Mrs. Decuir that administered to Mr. Gill immediately after his fall, and also to find out what if anything she has to say with regard to what she witnessed immediately preceding the fall."

It is clear from reading Commission Rule 36, supra, and the motion that the petitioners did not comply with the rule and make the required showing in support of their motion for continuance. Under such circumstances we cannot say that the hearing officer abused his discretion in denying the petitioners' motion.

Petitioners cite our opinion in Hartford Accident & Indemnity Co. v. Industrial Commission, 15 Ariz.App. 177, 487 P.2d 23 (1971), in support of their contention that the hearing officer abused his discretion in not granting the motion for a continuance. In Hartford we construed the same Commission Rule 36 and said:

"First, irrespective of the hearing officer's comments, timely application for subpoenas was made. Second, due to an unexplained delay by the Commission, over one week passed before the subpoenas were delivered to the petitioner for service. Third, the need for a continuance was made known to the hearing officer by the petitioner's April 3 letter, which described the legal theory of petitioner's case, and which, combined with the motion for a continuance following the hearing, certainly complied with Commission Rule 36, supra.

It is our opinion that under the circumstances here the hearing officer abused his discretion in failing to make some provision for accepting the offered testimony or granting a continuance." (15 Ariz.App. at 180, 487 P.2d at 26)

**336**

The *only* similarity between Hartford and the case at bar is the timely request for subpoenas, and that alone is not enough.

Award affirmed.

HAIRE, C. J., Division 1, and JACOBSON, J., concur.