NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CHRISTINE D. MAY, *Petitioner*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

MARICOPA COUNTY, *Respondent Employer*,

MARICOPA COUNTY, *Respondent Carrier*.

No. 1 CA-IC 13-0070
FILED 08-19-2014

---

Special Action - Industrial Commission
ICA Claim No. 20121-290170
Carrier Claim No. WCMAR2012704433

Deborah A. Nye, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Weston S. Montrose
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Klein, Doherty, Lundmark, Barberich & LaMont, P.C., Phoenix
By Lisa M. LaMont
*Counsel for Respondents Employer and Carrier*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

**¶1**  This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for a scheduled disability and supportive care. Claimant Christine May argues Dr. Irwin Shapiro's opinion is not legally sufficient to support the administrative law judge's (ALJ) finding that her left shoulder condition is not related to her industrial injury. Because the ALJ did not err, the award is affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2**  Claimant worked for the Maricopa County Sheriff's Office in criminal processing. She parked in a county garage and rode a shuttle bus between the garage and her place of work. On March 30, 2012, Claimant got out of the bus at the parking garage, stepped onto uneven concrete and fell on her left side.

**¶3**  Claimant first saw Ellen Hand, M.D., her primary care doctor. Dr. Hand recorded a history of Claimant catching herself on her outstretched left arm when she fell, which caused left elbow and wrist pain.

---

[1] This court defers to the ALJ's factual findings considering the evidence in a light most favorable to upholding the award, but reviews questions of law de novo. *See Young v. Indus. Comm'n*, 204 Ariz. 267, 270 ¶ 14, 63 P.3d 298, 301 (App. 2003); *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16, 41 P.3d 640, 643 (App. 2002).

An x-ray revealed a left elbow fracture, and Dr. Hand referred Claimant to Eric Novack, M.D.

¶4  Claimant first saw Dr. Novack on April 4, 2012, and noted the March 30 industrial injury followed by left elbow pain. Dr. Novack provided conservative treatment for the elbow fracture until August 2012. When the fracture did not heal properly, he repaired it operatively.

¶5  Dr. Novack first recorded complaints about Claimant's left shoulder on September 28, 2012 and then noted on November 5, 2012, "[h]er shoulder is bothering her more," with the following plan:

> 2. With regards to the shoulder, while it is certainly a possibility that her shoulder was injured at the time of her initial work related injury, I explained to her that I am not convinced it will be considered work related. It is continuing to bother her. We will do an MR arthrogram of the shoulder, and we will make further decisions once this is performed.

¶6  In December 2012, Claimant saw Evan Lederman, M.D., who reported that the MR arthrogram revealed "an intact rotator cuff [with] degenerative changes of the labrum." Dr. Lederman provided conservative treatment, but when Claimant's left shoulder pain did not improve, Dr. Lederman suspected an impingement or labral tear and recommended arthroscopic surgery. He related the recommended surgery to Claimant's March 30 industrial injury.

¶7  Bo Eldridge McClain, M.D., saw Claimant both before and after her industrial fall and provided Claimant ongoing medical treatment for pain management. He began seeing Claimant in December 2011 for cervical, arm and shoulder pain associated with fibromyalgia. He treated Claimant with epidural injections in her cervical, thoracic and lumbar spine, and her hips and shoulders. He stated that prior to her March 30 industrial injury, Claimant's left shoulder pain was referred pain from her cervical spine, and it was in the shoulder blade. After the industrial injury, she had a different type of shoulder pain, and it was located in the shoulder joint.

¶8  Dr. Irwin Shapiro, M.D., board certified in orthopedic surgery, performed an independent medical examination (IME) of Claimant. He reviewed and summarized her medical records in his report. Dr. Shapiro noted that after the industrial injury, there was no mention of

left shoulder pain until Dr. Novack's September 28, 2012 medical record. Moreover, before the industrial injury, Dr. McClain had noted complaints of left shoulder pain on "both abduction and adduction of that left shoulder." Dr. Shapiro explained that these findings indicated "[t]hat there is some type of abnormality in the shoulder itself, whether it be impingement or mild adhesive capsulitis or fraying or labral pathology." Dr. Shapiro opined that Claimant's left shoulder condition preexisted the industrial injury.

¶9 After her claim was closed with a scheduled permanent partial impairment based solely on a left elbow injury, Claimant timely protested. The ALJ held five hearings and heard testimony from Claimant and Drs. Lederman, McClain, Patel and Shapiro. The ALJ entered an award for a scheduled permanent partial impairment and supportive care. Claimant timely requested administrative review, and the ALJ supplemented and affirmed the award. From Claimant's timely challenge to that decision, this court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2), 23-951(A) (2014),[2] and Arizona Rules of Procedure for Special Actions 10.

## DISCUSSION

¶10 Review by this court "shall be limited to determining whether or not the commission acted without or in excess of its power and, if findings of fact were made, whether or not such findings of fact support the award, order or decision. If necessary, the court may review the evidence." A.R.S. § 23-951(B). Compensability requires injury by an accident arising out of and in the course of employment. *See* A.R.S. § 23-1021. This involves "both legal and medical causation." *DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App. 1984). Legal causation concerns whether Claimant's injury arose out of her employment. *See Peter Kiewit Sons' Co. v. Indus. Comm'n*, 88 Ariz. 164, 168, 354 P.2d 28, 30 (1960); *Scheller v. Indus. Comm'n*, 134 Ariz. 418, 420, 656 P.2d 1279, 1281 (App. 1982). Medical causation typically requires expert medical testimony to establish that the industrial accident caused the injury. *See Allen v. Indus. Comm'n*, 124 Ariz. 173, 175, 602 P.2d 841, 843 (App. 1979).

¶11 Claimant has the burden to prove all elements of a compensable claim. *See Toto v. Indus. Comm'n*, 144 Ariz. 508, 512, 698 P.2d

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

753, 757 (App. 1985). Unless the industrial injury immediately causes injuries that are obvious to a layperson, expert medical evidence is required to establish a causal relationship between the industrial injury and its alleged consequences. *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527-28, 647 P.2d 657, 658-59 (App. 1982). Any conflict in the evidence is to be resolved by the ALJ, and this court will not substitute its judgment. *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217, 439 P.2d 485, 489 (1968). The ALJ is the sole judge of credibility. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551, 679 P.2d 571, 574 (App. 1984).

¶12 Claimant relied on testimony from Drs. Lederman and McClain to meet her burden of proving that her left shoulder condition was causally related to the industrial injury and not to preexisting degenerative changes. Maricopa County responded with IME testimony from Dr. Shapiro and other evidence, including the lack of mention of left shoulder pain before Dr. Novack's September 28, 2012 notation. The ALJ resolved the conflicting medical evidence in Maricopa County's favor.

¶13 Claimant argues Dr. Shapiro's testimony cannot support the award, because on cross-examination, his answers rendered his testimony equivocal in the absence of a credibility finding. The testimony in question states:

> Q. Well, what if she did mention it to Dr. Nova[c]k, and he just didn't document those complaints, would that change your opinion?
>
> A. [Dr. Shapiro] It would be - - I would be surprised because, again, he did note the wrist, and he noted the elbow.
>
> Q. Well, if I ask you to presume that, in fact, she did tell him multiple times and - - and presume that that's true, that she really did tell him, would that change your opinion?
>
> A. Again, it depends. Was her pain present with her arm at rest or just with activity - - or elevation. Because if it's with the arm at rest, that's not impairment. Okay? Impingement is only with elevation. And to be frank I have never seen anybody only abduct to 50 degrees.

Usually it's 70 to 80 degrees at the worst with impingement, and then they usually get past it.

Q. So it's - -

A. *If she had complained multiple times to him that her shoulder hurt, hurt, hurt, hurt, and it's not as we noted the first time that he - - that we document, quote, claimant's shoulder was, quote, bothering her a bit, and that's on 9/28. So if he had seen her multiple times before, and she had complained each time about her left shoulder, then I would potentially have a different feeling about the complaint.* (emphasis added).

**¶14**      Claimant testified that she told Dr. Novack that her left shoulder hurt "[f]rom the beginning" and she told him that "[m]ore than once. Every visit." Claimant stated that, each time, Dr. Novack responded that after a fall some trauma could be expected. She argues that unless the ALJ found her testimony incredible, Dr. Shapiro's concession that if she repeatedly complained, he "would potentially have a different feeling about the [shoulder] complaint" rendered his opinion equivocal.

**¶15**      In response to Claimant's request for a specific credibility finding on administrative review, the ALJ supplemented her award finding:

> 1. The parties are in agreement that a specific finding should be made by the undersigned on the factual conflict between [Claimant's] testimony and Dr. Nova[c]k's contemporaneous medical records. [Claimant] testified that she reported a hurt shoulder on each visit she had with Dr. Nova[c]k, yet his records do not reflect such a report. I resolve the conflict by adopting the contemporaneous medical records as more probably correct.

By finding Dr. Novack's contemporaneous medical records more reliable than Claimant's memory in her testimony during the hearing, the ALJ resolved the conflicting evidence in favor of Dr. Shapiro and Maricopa County. Claimant has not shown that resolution is improper. Instead, the administrative record allows this court to determine the basis of the ALJ's

decision and, recognizing that credibility determinations are left to the ALJ, to confirm that there was a legally sound basis for the ALJ's decision. *See Joplin v. Indus. Comm'n*, 175 Ariz. 524, 528, 858 P.2d 669, 673 (App. 1993). Contrary to Claimant's argument, this court "cannot say the conclusion reached [by the ALJ] is wholly unreasonable." *Graver Tank & Mfg. Co. v. Indus. Comm'n*, 96 Ariz. 34, 38, 391 P.2d 589, 592 (1964). Moreover, on this record, the medical evidence was not "in conformance with [Claimant's] testimony completely," thereby distinguishing *Hunter v. Industrial Commission*, 73 Ariz. 84, 85, 237 P.2d 813, 814 (1951) upon which Claimant relies.

**¶16** The ALJ was not asked to find that Dr. Shapiro's response to counsel's hypothetical question on cross-examination rendered his opinion equivocal and speculative. Medical evidence is equivocal when a doctor keeps changing his or her mind or will not commit to an opinion. *See State Comp. Fund v. Indus. Comm'n*, 24 Ariz. App. 31, 36, 535 P.2d 623, 628 (1975). That Dr. Shapiro "would potentially" have a different opinion if the underlying facts he relied on for his opinion changed is reasonable. But that answer to a hypothetical question premised on a factual scenario the ALJ was not required to accept, and did not find, does not make Dr. Shapiro's testimony equivocal or speculative. *Id.* Instead, Dr. Shapiro's opinion is consistent with Dr. Novack's contemporaneous medical records, which the ALJ deemed to be more reliable and credible than Claimant's testimony. Accordingly, on this record, the ALJ properly addressed the evidence and no additional findings were necessary.

CONCLUSION

**¶17** The award is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: gsh