NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHNNY E. PURPER, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

CAI – CLANCY & CLANCY, *Respondent Employer*,

COPPERPOINT MUTUAL INSURANCE COMPANY,
*Respondent Carrier*.

No. 1 CA-IC 18-0009
FILED 2-21-2019

Special Action - Industrial Commission
ICA Claim No. 20081-020320
Carrier Claim No. 0805638
The Honorable Gaetano J. Testini, Administrative Law Judge (Retired)

**AWARD SET ASIDE**

APPEARANCES

Johnny E. Purper, Phoenix
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Stacey Ann Rogan
*Counsel for Respondent, ICA*

Copperpoint Mutual Insurance Company, Phoenix
By Sharon M. Hensley
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L**, Judge:

¶1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review. Purper contends the insurance carrier underpaid his temporary disability benefits and challenges his permanent award including supportive medical maintenance benefits. Because insufficient evidence supports the administrative law judge's ("ALJ's") findings and decision, we must set aside the award.

**BACKGROUND**

¶2 Purper fell from a ladder in March 2008 while performing maintenance on palm trees in the course of his employment. The fall caused a substantial injury to his left heel and a cut on his hand. Soon after the accident, Purper's workers' compensation claim for his injury was accepted by his employer's insurance carrier. His hand healed without incident, but the left heel required more care. Between 2008 and 2015, Purper underwent at least six surgeries. He also received pain management treatment. His claim was closed with awards for permanent disability and reopened at least twice between 2008 and 2016.

¶3 On March 15, 2017, the carrier again issued a notice of claim status closing Purper's claim, effective February 14, 2017, with an impairment and permanent award. The carrier also issued a notice of supportive medical maintenance benefits, authorizing two office visits a year for three years, possible injections, an MRI or CT scan, and three office visits over the course of two years for pain management. Later, the carrier issued a notice of permanent disability benefits for a scheduled impairment of 48 percent of the left lower extremity, paid at 75 percent of the applicant's average monthly wage of $3,000. Purper requested a hearing and investigation under A.R.S. section 23-1061(J), claiming that the carrier had

2

underpaid his temporary benefits beginning in 2012, and challenging the termination of his claim and subsequent award amount for permanent disability including supportive medical maintenance benefits.

¶4 Purper identified four time periods during which he believed underpayment of temporary benefits from the carrier occurred: (1) March 20, 2012 to May 17, 2012; (2) October 16, 2012 to February 20, 2014; (3) October 10, 2016 to February 14, 2017; and (4) February 15, 2017 to July 18, 2017. Purper testified that the carrier had underpaid his benefits during all four time periods. The ALJ treated the fourth time period as an appeal of the termination of Purper's claim, explaining that because it closed on February 14, 2017, he would not be eligible for temporary benefits unless the ALJ found he needed more active treatment.

¶5 To rebut Purper's claims, a carrier insurance adjuster reviewed Purper's complaint and the disability benefits paid, testifying that Purper received all temporary benefits owed during the third time period and that his case was closed for a time in 2012, though her testimony was vague as to specific dates within 2012. Neither the judge nor counsel asked her to confirm whether she believed Purper had been appropriately paid for the first time period that Purper identified.

¶6 Purper also challenged the termination of his claim and permanent disability award, arguing the scheduled impairment award and the supportive medical care award were insufficient for his needs. The ALJ heard testimony from Purper's doctor, who testified that after the date Purper's claim was terminated, he still needed injections for pain management and bracing for his foot; doctor's visits two to three times a year over the next three years; MRIs or CT scans; and pain management visits. He gave Purper's foot an impairment rating of 46 percent but agreed with other doctors' assessments that 48 percent was also an appropriate rating.

¶7 The ALJ found that Purper did not establish by a preponderance of the evidence that he was owed temporary partial disability benefits, citing only to the insurance adjuster's testimony. The ALJ also ordered a scheduled permanent partial disability award of 48 percent of the left lower extremity and further awarded additional supportive medical maintenance benefits suggested by Purper's doctor. Purper appealed to the ICA, who affirmed the ALJ's decision in full.

**DISCUSSION**

¶8        On appeal, Purper renews his argument that he has been underpaid benefits and challenges the scheduled award for permanent disability including supportive medical maintenance benefits. Our review of a workers' compensation case is limited to whether the record supports the ALJ's findings. *Pac. Fruit Exp. v. Indus. Comm'n*, 153 Ariz. 210, 214 (1987). We will affirm the award so long as it is supported by reasonable evidence, viewing the record in the light most favorable to the ALJ decision. *Delgado v. Indus. Comm'n*, 183 Ariz. 129, 131 (App. 1994). When no evidence of record supports the decision, the award will be set aside. *Van Dyke v. Standard Acc. Ins. Co.*, 92 Ariz. 173, 174 (1962); *Special Fund Div./No Ins. Section v. Indus. Comm'n*, 172 Ariz. 319, 324 (App. 1992).

¶9        Here, the evidence is insufficient to affirm the ALJ's decision regarding underpayment of Purper's temporary benefits. The ALJ based the factual findings solely on the claim adjustor's testimony. She only testified that Purper had been paid in full from October 10, 2016 to February 14, 2017 (the third time period Purper identified) and that his case was closed at some point in 2012. While the carrier's attorney commented during the hearing that Purper's claim was closed during the second time period, October 16, 2012 to February 20, 2014, no testimony confirms that assertion. Moreover, neither the ALJ decision nor our search of the record yields any evidence to rebut Purper's assertion that he was underpaid benefits during the first time period, March 20, 2012 to May 17, 2012. Accordingly, insufficient evidence supports the finding that Purper was provided with all benefits due.

¶10        We need not address whether reasonable evidence supported the ALJ decision on the remainder of Purper's appeal, because to do so would be futile. When reviewing a workers' compensation award, A.R.S. section 23-951(D) "limit[s] this court's power to modify, affirm in part, or remand with directions." *Arrowhead Press, Inc. v. Indus. Comm'n*, 134 Ariz. 21, 24 (App. 1982). Thus, we may either affirm the award in its entirety or set the award aside. *Id.*; A.R.S. § 23-951(D) ("The court of appeals shall enter judgment either affirming or setting aside the award, order or decision."). Because we have determined that insufficient evidence supports the ALJ's decision on the issue of temporary benefits, we must set aside the entire award, regardless of whether sufficient evidence exists to resolve the remaining issues. *See Arrowhead Press, Inc.*, 134 Ariz. at 24-25.

## CONCLUSION

¶11     For the foregoing reasons, we set aside the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED:  AA