501 P.2d 25

Helen RAYMER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Motorola, Inc., Respondent Employer,

Motorola, Inc., Respondent Carrier.

No. 1 CA–IC 674.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 21, 1972.

Rehearing Denied Oct. 17, 1972.

Review Denied Nov. 28, 1972.

Galen H. Wilkes, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

Evans, Kitchel & Jenckes, by John O. Theobald, II, and Robert R. Mills, Phoenix, for respondent employer and carrier.

DONOFRIO, Judge.

This case is before the Court by writ of certiorari on the petition of claimant, Helen Raymer, to review the lawfulness of the findings and award of The Industrial Commission of Arizona.

Petitioner, an employee of Motorola, Inc., alleged that she sustained a compensable injury arising out of an accident in the course of her employment when she inhaled hydrochloric acid fumes in a plating laboratory at Motorola on April 24, 1969. According to her testimony, she coughed and her eyes burned after the inhalation of the fumes. She did not mention the incident to her supervisor at Motorola at that time as she did not think it was relevant. The next day petitioner had laryngitis and went to the office of her family doctor, Jack Anderson Buttars, D. O., and was given a shot and some pills for the laryngitis by Dr. Kon, an associate of Dr. Buttars. She continued to work but complained of shortness of breath and incessant coughing. She then saw Dr. Buttars and he examined her, took X rays, and made a diagnosis of chemical bronchitis. Some time later petitioner reported the diagnosis of chemical bronchitis to her supervisor, Mary Morley, but was not referred to first aid, the company doctor or nurse. She continued to have trouble although she was transferred to another department in September 1969. Dr. Buttars was consulted on several occasions.

Upon his advice on September 25, 1969, she took a leave of absence and during this time she showed improvement. She returned to work on December 5, 1969 and worked for two weeks, then contracted bronchitis and was put in the hospital for three days by Dr. Buttars. This time she was off work for two weeks, returning on January 5, 1970. She worked until January 16 at which time she came down with lobar pneumonia. The doctor did not hospitalize her for the pneumonia, but treated her with medication and advised her to stay off work for six weeks or two months and she hasn't worked since. The doctor's advice was that she should not return to Motorola because of the effect of the chemicals upon her. She attempted to seek other employment, but having no special skills in other fields, failed to find work.

On February 9, 1970, petitioner filed a claim for workmen's compensation benefits on the basis of her doctor's diagnosis of a chronic bronchial condition. On March 10, 1970 the employer, which is self-insured, denied petitioner's claim, and on March 18, 1970 petitioner requested a hearing before the Industrial Commission, which was granted. Hearings were held on September 29 and November 24, 1970, petitioner being represented by counsel.

On March 24, 1971 the Industrial Commission hearing officer issued his decision upon hearing and findings and award which granted petitioner medical, hospital and surgical benefits for visits to Dr. Buttars on April 24 and May 9, 1969, but did not grant her claim for temporary total disability, temporary partial disability and permanent disability.

On April 23, 1971 petitioner filed her request for review by the Industrial Commission. On review, May 12, 1971, the Commission, over one dissenting vote, affirmed the decision of March 24, 1971, finding that the hearing officer's award was fully supported by the evidence. From that award petitioner seeks review by the Court of Appeals.

Dr. Buttars was the only medical witness testifying at the November 24, 1970 hearing. He testified that he had treated petitioner for a chronic bronchial condition subsequent to the time of the industrial incident, and later for the lobar pneumonia. He felt that the bronchial condition was caused by her working around chemicals and that she developed the lobar pneumonia from a weakened condition caused by the bronchial trouble.

At the hearing Dr. Buttars testified in part as follows:

"Q * * * for legal purposes, our question is, is it your opinion within the bounds of reasonable medical probability that the lobar pneumonia was caused or aggravated by the inhalation of the fumes in April of the year prior? What we are really asking is, is this probably what happened or is it just a possibility?

"A It is a possibility. You can't say that the lobar pneumonia was derived because of it.

\* \* \* \* \* \*

"Q Right now, is there any impairment to her lungs or respiratory system?

"A I don't think so.

\* \* \* \* \* \*

"Q * * * do you feel there is within the bounds of reasonable medical probability, any relationship between that inhalation in April of 1969 and the pharyngitis infection in December of 1969?

"A Again, it would be hypothetical. It is just difficult to say.

\* \* \* \* \* \*

"Q You would say at this time it is medically unadvisable that she return to the chemical exposure that she had, is that correct?

"A Yes, I would advise Helen not to.

"Q Would you then say that she has a permanent disability from ever returning to that type of exposure?

"A I can't say that. I mean I don't know. The only way you would know is to place her back in the situation which I don't think is wise to do. That is the

only way you would really know. I can't say 'yes' or 'no'. She doesn't do well in it.

\* \* \* \* \* \*

"Q You say probably or it is a high possibility that the eventual pneumonia was caused by that original inhalation, caused the weakened condition? If it wasn't caused by the one inhalation, could you say this would be an occupational disease?

"A That is difficult to answer because I really don't know the answer. The cause and relationship is difficult to say. * * *

\* \* \* \* \* \*

"Q Would you then say, if it wasn't the original inhalation of a concentrated amount of fumes, that the continued bronchitis and eventual pneumonia did come from being exposed to the chemicals? Would this be your conclusion rather than—I know we can't be definite.

"A I can't really answer. I wish I could tell you."

■■ It is well settled that the burden is upon the petitioner to prove the compensability of the claim made. Lee v. Industrial Commission, 15 Ariz.App. 302, 488 P.2d 507 (1971); Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965). If the causal relationship between the industrial incident and the resulting injury is not apparent, causation must be proved by opinion evidence from a competent medical witness. Lowry v. Industrial Commission, 92 Ariz. 222, 375 P.2d 572 (1962); Asbury v. Industrial Commission, 15 Ariz. App. 424, 489 P.2d 87 (1971); Gore v. Industrial Commission, 15 Ariz.App. 347, 488 P.2d 984 (1971).

■ Where, as in the case at bar, different inferences could be drawn from the evidence, this Court cannot substitute its opinion for that of the Industrial Commission unless the determination of the Commission is wholly unreasonable. Waller v. Industrial Commission, supra; Reserve Life Insurance Co. v. Industrial Com-

**187**

mission, 15 Ariz.App. 420, 489 P.2d 83 (1971).

 The function of the Court of Appeals when petitioned to review an Industrial Commission award is to determine whether the evidence before the Commission is sufficient to reasonably support its decision. Kasprowiz v. Industrial Commission, 14 Ariz.App. 75, 480 P.2d 992 (1971).

 Upon our review of the entire record, it is our opinion that the award is reasonably supported by the evidence.

Award affirmed.

STEVENS, P. J., and CASE, J., concur.