537 P.2d 1340

Thomas J. **LAWLER**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona, Respondent,
Sanner Contracting Company, Respondent Employer,
**Industrial Indemnity Company**, Respondent Carrier.

No. 1 CA–IC 1205.

Court of Appeals of Arizona,
Division 1,
Department C.
July 22, 1975.

Jones, Hunter & Lerch, P. A. by·Martin F. Keil, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C. by Lawrence H. Lieberman, Phoenix, for respondents employer and carrier.

## OPINION

WREN, Judge.

This review by certiorari challenges an award of the Industrial Commission which found that petitioner's medical condition had become stationary without any permanent physical or mental disability. Specifically stated, petitioner challenges both the procedural manner in which the award was rendered, and the sufficiency of the evidence to support the award.

On July 13, 1971, petitioner, Thomas J. Lawler, sustained an industrial back injury diagnosed as a low back strain. His claim for workmen's compensation benefits was accepted by respondent insurance carrier. In May of 1973, the carrier issued a Notice of Claim Status terminating all benefits. In protest thereof, three hearings were held, during which the following physicians testified: Dr. Carl Freund, an internist; Dr. William McGrath, a psychiatrist; Dr. Raymond Huger, a psychiatrist; Dr. Howard Aidem, an orthopedist; Dr. Robert Goodkin, a neurosurgeon. On May

8, 1974, the hearing officer entered his award finding that petitioner's condition became medically stationary in May of 1973, and that petitioner suffered no permanent mental or physical disability attributable to the injury. The award was affirmed by the Commission on review and petitioner thereafter filed his petition for writ of certiorari with this Court.

Petitioner's initial contention is that the respondents had the burden to justify the termination of benefits. We do not agree. The burden is on the claimant throughout to show by a preponderance of the evidence all the elements of his claim, and the carrier does not have to disprove it. Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969); Raymer v. Industrial Commission, 18 Ariz.App. 184, 501 P.2d 25 (1972). In this case, petitioner had the burden of showing that his condition was not stationary, Timmons v. Industrial Commission, 83 Ariz. 74, 316 P.2d 935 (1957), or in the alternative, that he had sustained a permanent disability. Spears v. Industrial Commission, 20 Ariz. App. 406, 513 P.2d 695 (1973).

Petitioner's primary argument on this appeal is that he was denied a full and fair hearing in violation of his constitutional right to due process. He cites numerous rulings of the hearing officer during the three hearings.

He argues that the hearing officer's interruption of his cross-examination of Dr. Aidem at the second hearing was a denial of due process. The record reflects that when the interruption occurred, a discussion was held off the record, following which the hearing officer stated that the doctor had two surgeries scheduled. The hearing officer then excused the doctor, rescheduling him for a third hearing which was held approximately six weeks later. Petitioner completed his cross-examination of Dr. Aidem at the third hearing.

Petitioner asserts that he was "prejudiced" by not being able to finish his cross-examination at the second hearing. He reasons that the doctor was relieved

from answering questions under the "pressure of the moment", and was allowed time to reflect and cogitate on his answers.

Petitioner does not claim that the doctor committed perjury at the third hearing. We note also that there is no evidence in the record showing that either the hearing officer or the respondents had knowledge of the doctor's time restrictions prior to the interruption. We recognize that in Commission proceedings the interests of the parties must be considered as paramount. However, we also recognize that substantial reliance must be placed on medical experts, and every effort must be made to facilitate the taking of such testimony at a minimum of inconvenience to the physicians and their patients. In this case, the petitioner has shown no evidence of prejudice constituting a denial of due process.

Petitioner next contends that a motion picture taken of petitioner was improperly admitted into evidence in contravention of Rule 47,[1] Rules of the Industrial Commission. Under Rule 47(a), notice of intent to offer motion pictures into evidence must be given to all interested parties prior to the first scheduled hearing. However, 47(e) explicitly states that the provisions of Rule 47 do not apply to motion pictures obtained by surveillance. Petitioner construes subsection (e) as prohibiting the introduction of all surveillance film into evidence at Commission proceedings. He reasons that a contra interpretation would make surveillance films not subject to the foundational requirements for admissibility set out in 47(c). Again, we disagree, both with petitioner's reasoning and construction of the Rule. Despite the inapplicability of Rule 47 to surveillance films, such films must be authenticated and relevant to be admissible. Udall, Law of Evidence § 132 at 280 (1960). If a film is a substantially accurate and correct representation of relevant facts observed, then it should be admissible. Slow Development Co. v. Coulter, 88 Ariz. 122, 353 P.2d 890 (1960); McCormick on Evidence § 214 (1972). It has been stated that the trial court—or in this case the hearing officer, has considerable discretion as to the admissibility of such evidence. Baker v. Atchison, Topeka and Santa Fe Railway Co., 11 Ariz.App. 387, 464 P.2d 974 (1970). We find no basis in the record for saying that this discretion was abused by the hearing officer here.

Petitioner additionally argues that Commission Rules 14, 31(d) and 55(a)[2] were

1. Rule 47 provides:
"Applicability, Videotape Recordings and Motion Pictures
"(a) Any party proposing to offer a videotape recording and/or motion picture into evidence at a Commission hearing shall so notify in writing the Commission and all interested parties and their authorized representatives at least forty (40) days prior to the first scheduled hearing.
"(b) Upon written request of another interested party, the party proposing the videotape recording and/or motion picture shall provide the necessary facilities and equipment to view such videotape recordings and/or motion pictures no less than twenty-five (25) days prior to the first scheduled hearing.
"(c) Videotape recordings and/or motion pictures may be admitted into evidence when such are a reasonable and faithful representation of the scene, person, object or action portrayed and when such would aid in the understanding before the hearing officer. Commentary, interrogation, dialogue or testimony shall not be part of such videotape recordings and/or motion pictures.
"(d) No scheduled hearing shall be cancelled or continued for failure to view the videotape recordings and/or motion pictures within the time provided pursuant to this rule.
"(e) This rule shall not apply to the videotape recordings and/or motion pictures obtained by surveillance."

2. Rule 14 provides:
"If the Commission, carrier or employer requests an examination of the employee by a physician of their choosing, notice of the time, date, place and person conducting the examination shall be sent by the party requesting same to the employee, and his at-

violated by respondents use of the motion picture. His contentions revolve around respondents showing of the film to Dr. McGrath, following an examination of petitioner by the doctor, but prior to the first hearing. In his report following the examination, a copy of which was given to petitioner, Dr. McGrath indicated that petitioner had a psychiatric disorder historically related to his industrial episode. However, after viewing the film, the doctor changed his opinion—based partly on the film, and testified at the first hearing that petitioner had no psychiatric disorder. Petitioner apparently did not become aware of either the film or Dr. McGrath's revised opinion until the doctor testified at the first hearing. Compliance with the cited rules, he states, would have given him notice of the change of opinion prior to the hearing so as to enable him to properly prepare.

▇▇▇ In our opinion, however, none of the Rules cited by petitioner were applicable to the situation here. In relevant part, Rule 14 requires that when an examination is made of a workman by a physician, prior notice must be given to the workman. Petitioner argues that Dr. McGrath's viewing of the film was an examination by the doctor of petitioner in contravention of the rule. We disagree. The language of the

rule must be construed in accordance with its ordinary meaning.

▇▇▇ As to Rules 31(d) and 55(a), their general import is that medical reports obtained by a party must be exchanged with the opposing party. This was done with the report of Dr. McGrath following his examination of petitioner. If after viewing the film, Dr. McGrath had embodied his revised opinion in a written report, the rules would have necessitated its delivery to petitioner. However, no such medical report was made by the doctor. Further, the record is devoid of evidence showing any influence placed upon the doctor by respondents to prevent a report from being made. Since Dr. McGrath made no written report as to his revised opinion, Rules 31(d) and 55(a) were inapplicable.

Petitioner additionally asserts that the hearing officer abused his discretion by not allowing petitioner to secure rebuttal witnesses, and that such refusal was an unconstitutional limitation on his right to present evidence. The record reflects that during the three hearings, the hearing officer denied petitioner's repeated requests for a continuance to obtain a motion picture expert and/or an orthopedic surgeon to review the film.

▇▇▇ Commission Rule 41 requires that witnesses be subpoenaed in advance of the

---

torney of record at least five (5) days prior to the scheduled date of the examination."

Rule 31(d) provides:

"If a carrier or employer requests a medical examination of an employee, a copy of the report of the examination shall, upon request, be furnished to the employee or his attorney by the carrier or the employer. The claimant or his attorney shall furnish to the insurer or employer upon request all medical reports of examinations made of the claimant's mental or physical condition which are or may thereafter be in his possession. If such reports are not in his possession, he shall provide the employer or carrier with releases authorizing all attending, treating or examining physicians to provide such reports."

Rule 55(a) provides:

"If medical reports or hospital records sought to be relied upon by any or all of the

parties are not contained in the Commission's claim file prior to filing of the request for hearing, the same shall be filed at least twenty-five (25) days prior to the date of any first scheduled hearing, and copies shall be provided to all other interested parties or their authorized representatives. Any report or hospital record not so submitted shall not be received in evidence and if such report or record has been placed in the claims file, it shall be removed and returned to the party submitting it. The effect of this rule may be suspended in the sound discretion of the presiding hearing officer. The party filing a medical report or hospital record pursuant to this rule shall contemporaneously record his identity and proof of service of copies."

first hearing held. The additional witnesses sought by petitioner had not been subpoenaed yet, petitioner still asserts he had a right to obtain these witnesses after the start of the Commission hearings. In effect, what petitioner contends he has a right to, is to appear at a hearing, scrutinize the opposing evidence, and then go out and obtain witnesses to counter the opposition's case. This is the precise reason for discovery, which is provided for under the Commission Rules. Petitioner took neither depositions nor interrogatories to learn of the film's existence. He cannot now claim he was surprised by this evidence.

Additionally, we consider as unfounded the comparison petitioner attempts to draw between the denial of his request for new witnesses, and the hearing officer's granting of continuances to secure the testimony of witnesses that had been timely subpoenaed by respondents.

In sum, we find no abuse on the hearing officer's part. To sustain petitioner's contention would be to subvert the quasi-judicial system provided for under our Workmen's Compensation Act, the purpose of which is to dispose of claims in an orderly and expeditious fashion.

Petitioner has made various other assignments of error committed by the hearing officer. We have considered them, and find no basis for setting aside the Commission's award.

As to the sufficiency of the evidence to support the award, it is well established that the existence of any disability and its relation to the industrial accident is solely within the realm of knowledge of medical experts. Waller v. Industrial Commission, 99 Ariz. 15, 406 P.2d 197 (1965); Benavides v. Industrial Commission, 19 Ariz.App. 467, 508 P.2d 354 (1973). Construing the medical record, as we must, in a light most favorable to sustaining the Commission's award, Malinski v. Industrial Commission, 103 Ariz. 213,

439 P.2d 485 (1968), we find it reasonably supports the Commission's findings.

The award is affirmed.

NELSON, P. J., and STEVENS, J., concur.