588 P.2d 368

PHELPS DODGE CORPORATION and State Compensation Fund, Petitioners,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Cruz G. Lopez, Respondent Employee.

No.. 1 CA–IC 1923.

Court of Appeals of Arizona, Division 1, Department C.

Oct. 31, 1978.

Rehearing Denied Dec. 12, 1978.

Review Denied Jan. 3, 1979.

Evans, Kitchel & Jenckes, P.C. by James G. Speer, Phoenix, for petitioner, Phelps Dodge Corp.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for petitioner, State Compensation Fund.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Davis, Eppstein & Tretschok, P.C. by Robert W. Eppstein and Philip Hall, Tucson, for respondent employee.

## OPINION

WREN, Presiding Judge.

This Special Action—Industrial Commission brought by the petitioner-employer and the State Compensation Fund ("petitioners") requests review of an award granting the respondent-employee's ("claimant's") petition to reopen. The sole issue presented is whether the award can be sustained in view of the record and the hearing officer's findings in the award.

The claimant sustained a compensable low-back injury on March 25, 1971. He was treated by Warren D. Eddy, Jr., M.D., and underwent a laminectomy performed by Dr. Eddy in January, 1973. The claimant sustained a 20 percent general functional disability and on November 8, 1974 was found to have sustained a 22.37 percent loss of earning capacity entitling him to an award of $107.84 per month.

In July, 1975 the claimant petitioned for readjustment and, upon its denial, requested a hearing. After formal hearings, readjustment was denied on September 30, 1976 on the ground that there was no causal connection between the claimant's discharge from employment and his industrial disability. A few days after this award was

affirmed the claimant filed a petition to reopen. Upon denial of the petition, the claimant requested a hearing and formal hearings were held in May, June, and July, 1977. The hearing officer then allowed reopening on July 29, 1977. The decision was affirmed and this petition for special action was then timely filed.

Petitioners challenged the grant of a reopening on grounds that the record is devoid of requisite comparative evidence and that the award is not specific enough. We agree that the award is not sufficiently specific and, therefore, set aside the award on that basis.

The reopening of an award is justified, under A.R.S. § 23–1061(H), when there exists a new, additional or previously undiscovered temporary or permanent condition. As we explained in *Blickenstaff v. Industrial Commission*, 116 Ariz. 335, 339, 569 P.2d 277, 281 (Ct.App.1977):

"The very nature of assessing the advisability of reopening mandates an evaluative, comparative process. Since a Petition to Reopen is the recognition of the obvious fact that some rearrangement or revision of the previous decision upon a claim is desired, the burden is upon the petitioner to offer appropriate comparative evidence so that relevant items can be juxtaposed to establish similarities or dissimilarities. (Citations omitted)."

Four expert witnesses testified at the hearings on the petition to reopen. Jorge Gaytan, M.D. was employed by the petitioner-employer during the time he saw the claimant. Dr. Gaytan testified that he was not able to help the claimant and therefore referred him to Dr. Vinyard. This doctor's testimony was quite brief and did not contain any comparative evidence.

Warren Eddy, Jr., M.D., the claimant's attending physician, saw the claimant regularly from the time of the injury through November 13, 1973 and thereafter on two occasions, June 16, 1975 and October 18, 1976. At neither of these latter two visits was the doctor able to find any new, additional or previously undiscovered condition. On June 16, 1975 Dr. Eddy's physical findings were "essentially those seen previously: full range of motion in the back with marked complaints in all motions; normal neurological findings" and he testified that he "could see no objective differences in this man's condition than there was at the time of his discharge." He further testified that on October 18, 1976 his findings were not remarkably changed and he felt no need to perform a myelogram. Dr. Eddy expressed caution as to the reliability of a myelogram study on one who had a previous myelogram and surgery. The doctor did state that the claimant complained of more pain in the recent past but was firm in his opinion that there was no change in objective evidence. He transferred the claimant to Dr. Vinyard in Douglas.

Hugh C. Thompson, III, M.D., saw the claimant for two consultations, on June 6, 1975 and May 3, 1977. He also prepared a further report after viewing the myelogram x-rays done by Dr. Vinyard in April, 1977. Dr. Thompson testified that he could find no significant increase in the disability status and felt that the 20 percent general physical functional disability rating remained a fair appraisal. He also testified that a post-surgery myelogram would be difficult to interpret and that he would place greater weight upon clinical examination findings than such a study. Even a reading of Dr. Vinyard's May 4, 1977 report did nothing to change Dr. Thompson's opinion.

The final expert testimony was given by Ronald W. Vinyard, M.D., who saw the claimant on a number of occasions from September 9, 1976 through July 12, 1977. He performed a myelogram on the claimant on April 26, 1977 but did not, despite medical testimony as to the potential unreliability of a post-myelogram and post-surgery study, compare his study with the 1973 myelogram. Following the myelogram Dr. Vinyard injected the claimant with Depo-Medrol and, finding a subsidence of symptoms, concluded that there was nerve root irritation. The doctor further testified that there were changes during the times he had seen the claimant. He described such

changes as a more common pain radiating into the testes and an increase in magnitude of complaints of pain. He stated that, in his opinion, the claimant had a surgical lesion.

Both Drs. Vinyard and Thompson recommended that further discovery be undertaken. Dr. Vinyard recommended further exploration of the area demonstrated on the myelography and Dr. Thompson suggested a neurological consultation to clear up the differing opinions. While we sympathize with the desire to reach a definitive diagnosis, it has been established that "the judicial creature known as the 'conditional' reopening has ceased to exist." *Colorado River Inn v. Industrial Commission,* 116 Ariz. 27, 31, 567 P.2d 343, 347 (1977). The petition to reopen could not, therefore, have been granted on the basis of recommended explorations.

Where there is a conflict in the medical testimony, it is the responsibility of the hearing officer to resolve it. This Court cannot substitute its opinion as to which of the doctors is more probably correct. *Hannon v. Industrial Commission,* 9 Ariz.App. 231, 451 P.2d 44 (1969). However, in a petition to reopen, the Workmen's Compensation Act requires the showing of a comparative change in physical condition since the entry of the original award. *Aetna Insurance Co. v. Industrial Commission,* 115 Ariz. 110, 563 P.2d 909 (1977).

We are unable to determine from the award or the record upon what comparative evidence, if any, the hearing officer based his decision to reopen the claim. He set forth, in a clear and concise manner, the appropriate case law. Nevertheless, he made no direct fact findings as to what inferences he had drawn from what conflicting evidence, nor, more importantly, exactly what the new, additional or previously undiscovered condition was. The findings of the award do not meet the specificity required under *Garcia v. Industrial Commission,* 26 Ariz.App. 313, 548 P.2d 26 (1976).

Since we have no authority to remand for specific findings and can only affirm the award or set it aside in its entirety, A.R.S. § 23–951(D), we set aside the award.

NELSON and EUBANK, JJ., concur.