NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

─────────────────────────────

ADNAN AL-SHARIFI, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MAYO CLINIC, *Respondent Employer/Carrier*.

No. 1 CA-IC 14-0047
FILED 5-5-2015

─────────────────────────────

Special Action – Industrial Commission
ICA Claim No.  20121-010428
Carrier Claim No. 69593
The Honorable Deborah A. Nye, Administrative Law Judge

**AFFIRMED**

─────────────────────────────

COUNSEL

Adnan Al-Sharifi, Glendale
*Petitioner*

Jardine Baker Hickman & Houston PLLC, Phoenix
By Terrence Kurth
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Acting Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Chief Judge Diane M. Johnsen and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**      Adnan Al-Sharifi (Claimant) seeks special action review of an Industrial Commission of Arizona (ICA) award and decision upon review, in which the administrative law judge (ALJ) found his medical condition became stationary on September 11, 2013, with no permanent impairment. Although Claimant's briefing is somewhat unclear, we understand him to be arguing the ALJ's findings and award were not reasonably supported by the record.[1] For the following reasons, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2**      We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2) (2015) and 23-951(A) (2015), and Arizona Rule of Procedure for Special Actions 10. When reviewing ICA's findings and awards, we defer to the ALJ's factual findings, but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).

---

[1]      On appeal, Claimant also argues his case was improperly "passed" to another attorney without his consent, and that his attorney was ineffective. Assuming without deciding that ineffective assistance of counsel could be a ground for vacating an ICA award, Claimant did not raise these issues to the ALJ, and they are not properly before us in this special action. *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 44, ¶ 4, 6 P.3d 745, 748 (App. 2000) (noting "this Court generally will not consider on appeal issues not raised before the [Industrial Commission]"). Additionally, we do not address the issues Claimant raises in relation to his employer providing him with only three months to locate another job after his injury because they are not relevant to the immediate appeal.

## FACTS[2] AND PROCEDURAL HISTORY

¶3　　　　Claimant worked in the housekeeping department for the respondent employer, Mayo Clinic (Mayo), cleaning carpets and floors. On March 24, 2012, Claimant reinjured his lower back while using a power washer; the original injury occurred in 2008.[3] As a result of the March 24th incident, Claimant filed a workers' compensation claim, which was accepted for benefits.

¶4　　　　Claimant was treated at Mayo by Dr. Matthew Butters, presenting with pain in his lower back, left buttock and left thigh. He also was experiencing tingling in his left leg and some numbness in both legs. Dr. Butters noted Claimant's back pain was likely myofascial in nature and found "known disk degenerative changes" from an MRI performed in 2009. A subsequent MRI revealed "the presence of a small herniated disk at L5-S1 on the right side with contact to the S1 nerve root," as well as mild degenerative disk disease at the L2-L3 and L5-S1 levels, but no abnormalities in his lower left back.

¶5　　　　Over the next year, Dr. Butters prescribed Claimant medications, including anti-inflammatories, to help with muscle spasm and tightness, which were ultimately ineffective. He also prescribed Claimant a multitude of conservative treatments, including physical therapy, SI joint mobilization therapy, and a series of injections — a lumbar epidural injection, a caudal epidural injection, and a left SI joint injection — none of which provided Claimant with lasting relief.

¶6　　　　Claimant was also referred to Dr. Nareesh Patel for a neurological consult. Dr. Patel found no evidence of "neural element compression on the left side at any level," "significant central canal stenosis," or a "tumor, infection, fracture, or gross instability," and noted that Claimant's pain did not fit any particular nerve root distribution. With these findings, Dr. Patel did not recommend any operative procedures.

---

[2]　　　We view the evidence in the light most favorable to affirming the ICA's findings and award. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 490-91, ¶ 2, 154 P.3d 391, 392-93 (App. 2007).

[3]　　　An MRI and x-rays taken in relation to his original injury revealed Claimant suffered from a minor disk bulge at L5-S1 with an annular tear and disk degenerative changes, as well as a central disk extrusion at L2-L3.

¶7          In February 2013, Claimant returned to Dr. Butters for a follow-up visit, continuing to complain of the same pain symptoms. At this time, Dr. Butters opined Claimant had reached maximal medical improvement. Dr. Butters continued Claimant on a prescription for pain, but stated there was nothing left to do for Claimant from a diagnostic or treatment standpoint.

¶8          Based upon Dr. Butters' conclusion, Mayo issued a notice of claim status on April 23, 2013, closing Claimant's claim as stationary[4] with no permanent disability. Claimant timely requested, and was granted, a hearing. After receiving testimony intermittently over several months, the ALJ determined Claimant's condition was stationary, without permanent impairment, as of September 11, 2013. The ALJ affirmed her decision after Claimant requested further review. Claimant then timely petitioned this Court for special action relief.

## DISCUSSION

¶9          In workers' compensation cases, the claimant bears the burden of proving his condition is causally related to an industrial injury and is not medically stationary, or if the condition is medically stationary, that he has sustained a permanent disability attributable to that injury. *See Lawler v. Indus. Comm'n*, 24 Ariz. App. 282, 284, 537 P.2d 1340, 1342 (1975) (citations omitted). Where these elements are not readily apparent to laymen, they must be established with expert testimony. *Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 121, 776 P.2d 797, 799 (1989); *see Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 5, 243 P.3d 604, 606 (App. 2010) ("Back and spine injuries typically require expert medical testimony to demonstrate not only the causal connection between a claimant's medical condition and the industrial accident, but also the existence and extent of any permanent impairment.") (citing *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527-28, 647 P.2d 657, 658-59 (App. 1982)). The ALJ is tasked with resolving any conflicts in the medical evidence, "and we will not disturb that resolution unless it is 'wholly unreasonable.'" *Gamez v. Indus. Comm'n*, 213 Ariz. 314, 316, ¶ 15, 141 P.3d 794, 796 (App. 2006) (quoting *Ortega v. Indus. Comm'n*, 121 Ariz. 554, 557, 592 P.2d 388, 391 (App. 1979)).

---

4          A claimant's physical condition is medically stationary when it "has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition." *Aragon v. Indus. Comm'n*, 14 Ariz. App. 175, 176, 481 P.2d 545, 546 (1971).

¶10　　　　Dr. Michael Winer and Dr. Terry McLean, both board-certified in orthopedic surgery, testified at the hearing on behalf of Claimant and Mayo, respectively. Each reviewed Claimant's MRI films and appreciated a central and right paracentral disk protrusion at L5-S1 that was compressing the S1 nerve root of the spine, as well as bulging and facet arthropathy at L4-L5 that mildly narrowed the lateral recess of the spine at that level. The doctors agreed that Claimant's condition was related to the industrial incident and had become medically stationary, but had a difference of opinion as to whether Claimant had suffered a permanent impairment.

¶11　　　　Dr. McLean opined that Claimant did not sustain a permanent impairment. He explained that Claimant's subjective complaints of pain on his left side were not supported by any objective clinical or diagnostic findings or substantiated by neural compression. Specifically, he noted that the compression of the S1 nerve was on the right side, and would not cause Claimant's symptoms. Dr. McLean further stated that Claimant's complaints did not fit any nerve root pattern. Dr. McLean also testified that electrodiagnostic tests, performed by Dr. Kahn in October 2013, did not reveal any evidence of "a right or left lower extremity radiculopathy, focal neuropathy, or generalized peripheral neuropathy."[5] Dr. McLean concluded that Claimant had "chronic nonspecific low back pain and non verifiable radicular syndrome" with no evidence of an S1 radiculopathy. Therefore, Dr. McLean did not recommend Claimant receive supportive care or be placed on work restrictions.

¶12　　　　Dr. Winer opined that "[b]ased on AMA Guidelines with [Claimant's] persistent lumbar pain and nonverifiable radicular pain . . . , [Claimant fell] under the Class 1 of the lumbar regional grid," and graded at a six percent permanent impairment. Dr. Winer explained that the 6th edition of the AMA Guidelines allows for a Class 1 rating based upon non-verifiable radicular complaints, which he described as "pain down [a] leg that conforms at least in [the patient's] pain mapping with a radicular pattern" without objective findings, such as reflex, sensory, or motor changes in the patient. To this point, Dr. Winer believed Claimant's pain corresponded somewhat to the L5 or S1 dermatomal pattern despite Dr. Patel's earlier finding that Claimant's pain did not "fit a particular nerve root pattern." He also stated that Claimant's normal electrodiagnostic

---

[5]　　　Radiculopathy refers to a "[d]isease of the nerve roots," Dorland's Illustrated Medical Dictionary 1264 (24th ed. 1965), while neuropathy "denot[es] functional disturbances and/or pathological changes in the peripheral nervous system." *Id.* at 1007.

study conducted by Dr. Kahn did not change his opinion because it is possible radicular pain may be caused by nerve root irritation that is not sufficient to register on an electrodiagnostic study, and that the result was not surprising because Claimant complained more of back than leg pain. Dr. Winer admitted physicians are provided discretion in rating a permanent impairment, and that this case was sufficiently complex to allow reasonable physicians to differ as to whether such an impairment existed. Based upon his findings, Dr. Winer believed that Claimant should receive supportive care and be placed on permanent light duty work restrictions.

¶13        To the extent the medical testimony conflicted, the ALJ resolved the conflict in favor of the opinion of Dr. McLean.  It is the ALJ's role to "resolve all conflicts in the evidence, especially when the conflicts involve expert medical testimony." *Post v. Indus. Comm'n*, 160 Ariz. 4, 8, 770 P.2d 308, 312 (1988) (citing *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975), and *Phelps Dodge Corp. v. Indus. Comm'n*, 121 Ariz. 75, 77, 588 P.2d 368, 370 (App. 1978)).  Because the resolution was based upon a reasonable view of the record, we cannot say it was "wholly unreasonable." *See Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19-20, 695 P.2d 261, 268-69 (1985) (citing *Ortega*, 121 Ariz. at 557, 592 P.2d at 391).

## CONCLUSION

¶14        For the foregoing reasons, the award is affirmed.

